UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  4:23CR421 - SEP |
| | ) |
| MOHSEN AKBARI, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Mohsen Akbari, represented by defense counsel Raymond Bolourtchi, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I and II of the Indictment, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's wire fraud scheme and interstate transportation of stolen property, between

1

approximately March 2023 and September 2023, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

## 3. ELEMENTS:

As to Count I, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: the defendant (1) voluntarily and intentionally devised a scheme to defraud and to obtain money from another by means of false and fraudulent representations, promises and pretenses (2) with the intent to defraud and (3) in furtherance and execution thereof did send and cause to be sent interstate electronic signs, signals and transmissions.

As to Count II, the defendant admits to knowingly violating Title 18, United States Code, Section 2314, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) cash was stolen; (2) the cash had a value of $5,000 or more; (3) after the cash was stolen, the defendant moved it across a state line;

and (4) at the time the defendant moved the cash across a state line, he knew that it had been stolen.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

1. The defendant, Mohsen Akbari, is a Canadian citizen who is not lawfully authorized to work in the United States.

2. Beginning on or about March 1, 2023, and continuing through on or about August 22, 2023, within the Eastern District of Missouri and elsewhere, the defendant, with the intent to defraud, knowingly devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, to wit, the defendant stole cash from various retail stores, including Walmart, across the United States.

3. On March 1, 2023, the defendant entered the United States in Dallas, Texas, from South Korea as a visitor. Thereafter, the defendant travelled approximately on a weekly basis across the United States, including to Texas, Louisiana, Mississippi, Georgia, Tennessee, Kentucky, Ohio, Indiana, Missouri, Illinois, Virginia, Maryland, and Pennsylvania. At these locations, the defendant rented vehicles, including from Enterprise and Turo, a peer-to-peer car-sharing company that allows individuals to rent private vehicles.

4. As the defendant travelled to each State, the defendant entered various retail

3

stores, including Walmart, with the intent to steal cash. As part of this scheme, the defendant typically made a small purchase at a check out register using cash. After the transaction was completed, the defendant typically asked for change and used a ruse to convince cashiers to show him United States bills, typically $100 dollar bills from their drawar. In one common ruse, the defedent represented to the cashier that he and his family collect $100 dollar bills. The defendant then requested that the cashier show him the bills contained in that cashier's cash register so that he could examine the serial numbers on the bills. In truth and fact, the neither the defendant nor his family collects bills based on the serial number on the bills. After the cashier handed the defendant a stack of bills, the defendant would surreptitiously place some of the bills into his sleeve or pocket. The defendant would then return the remaining stack of bills to the cashier. In some instances, the defendant would ask the cashier to see another stack of bills in order to inspect the serial numbers.

5. The defendant travelled to various Walmart locations in and near the Eastern District of Missouri in furtherance of the aforementioned scheme and stole the following amounts of cash:

| Date | Walmart Location | Amount |
| --- | --- | --- |
| 6/12/2023 | St. Peters, MO | $520 |
| 6/12/2023 | St. Peters, MO | $1,900 |
| 6/13/2023 | Granite City, IL | $6,900 |
| 6/14/2023 | O'Fallon, MO | $420 |
| 6/14/2023 | Warrenton, MO | $900 |
| 6/15/2023 | Eureka, MO | $580 |
| 6/15/2023 | Arnold, MO | $5,100 |

6. The defendant then transported the aforementioned stolen cash to the State

of Indiana and made the following deposits into his PNC Bank account ending in #9305 using ATM machines located in Gary, Indiana:

| Date | ATM Deposit Location | Amount |
| --- | --- | --- |
| 6/20/2023 | Gary, IN | $7,200 |
| 6/20/2023 | Gary, IN | $5,000 |
| 6/20/2023 | Gary, IN | $5,000 |
| 6/20/2023 | Gary, IN | $5,000 |
| 6/20/2023 | Gary, IN | $3,900 |
| 6/20/2023 | Gary, IN | $3,700 |

7.  Throughout the scheme, the defendant made periodic batch cash deposits of the stolen funds into his United States bank accounts, including TD Bank account ending in #9449 and PNC Bank account ending in #9305. The defendant admits that all of the cash deposited into these accounts represents proceeds of his fraud scheme. Following these deposits, the defendant then made several international wire transfers, including to his bank accounts in Canada.

8.  On or about June 13, 2023, having devised the foregoing scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, the defendant, did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, namely the electronic payment of $325.75 by and through the Turo application for the rental of a Kia Sorrento from a third party for the period of June 13, 2023, to June 17, 2023, which the defendant used to travel between various Walmart retail stores in the Eastern District of Missouri.

9. On or about June 20, 2023, the defendant herein, did unlawfully transport and cause to be transported in interstate commerce from St. Louis, Missouri, to the State of Indiana, stolen money having a total value of more than $5,000, knowing the same to have been stolen.

10. On August 22, 2023, the defendant was arrested in Connecticut. Agents seized $5,388 in U.S. currency and 150 Australian dollars (AUD) from the defendant's person. The defendant admits that this seized currency represents proceeds from his fraud scheme.

11. On August 23, 2023, the United States seized $49,682.22 U.S. currency from the defendant's TD Bank account ending in #9449 and $20,182.06 U.S. currency from the defendant's PNC Bank account ending in #9305. The defendant admits that this seized currency represents proceeds from his fraud scheme.

12. The defendant admits that the total loss from the aforementioned scheme is $109,452, and that he obtained the same amount in proceeds from his offense.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count I (wire fraud) is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count II (interstate

transportation of stolen property) is imprisonment of not more than 10 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

6. **U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:** The parties agree that Counts I and II group together pursuant to Section 3D1.2.

(1) **Base Offense Level:** The parties agree that the base offense level is seven (**7**), as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that eight (**8**) levels should be added pursuant to Section 2B1.1(b)(1)(E) because the loss exceeds $95,000, but is less than $150,000.

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that two (**2**) levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction,

the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

 **c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level applicable to Count One is thirteen (**13**).

 **i. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

 **j. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

 **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

(2) **Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

d. **Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision**: The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United

States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Indictment.

  **g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant specifically agrees to the forfeiture of the following: (i) $49,682.22 seized from TD Bank account ending in #9449; (ii) $20,182.06 seized from PNC Bank account ending in #9305; and (iii) $5,388.00 in U.S. currency seized from the defendant on August 22, 2023. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether

11

or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

12/1/2023
Date

_____
Kyle T. Bateman
Assistant United States Attorney

_____
Date

_____
Mohsen Akbari
Defendant

12/01/2023
Date

_____   48317
Raymond Bolourtchi
Attorney for Defendant

14